**UNITED STATES of America**
**v.**
**Rutledge SLATTERY.**
**Civ. A. No. 28336.**

United States District Court
E. D. Pennsylvania.
Oct. 11, 1963.

Fred B. Ugast and Robert L. Handros, Dept. of Justice, Washington, D. C., for plaintiff.

Rutledge Slattery, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This is a civil action to obtain judgment for an unpaid penalty from the defendant, a corporate officer, for wilfully failing to pay over withholding taxes of the Philadelphia Brewery Company (hereinafter referred to as "Company") for the second quarter of 1948 (ending 7/31/48) in the amount of $6,538.70, plus interest from 8/31/54. The action is predicated on §§ 2707(a) and 2707 (d)[1] of the Internal Revenue Code of 1939. 26 U.S.C.A. § 2707 (a) and (d). These penalty sub-sections apply to social security and withholding taxes by virtue of §§ 1430 and 1627 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1430 and 1627.[2]

This case presents two questions:

(1) Was the defendant a "person" under a duty to collect and pay the taxes within the purview of § 2707(d); and

(2) If he was, did he wilfully fail to collect and pay over the withholding taxes imposed against the Company on wages paid its employees within the meaning of § 2707(a)?

The Company, organized in 1928, had weathered prohibition, depression, peace and war until the end of 1946, when a jurisdictional strike inflicted a severe set-back from which the brewery never recovered. Rutledge Slattery, the Company's president, one of five directors, a substantial shareholder, a co-trustee of the voting trust which controlled the Company, and creditor of the Company, was authorized by the Board, in the spring of 1947, to borrow funds to keep the company going. Banks refused his requests for capital funds, so he personally loaned money to the Company and also made loans to the Company from his

---

1. 26 U.S.C.A. § 2707(a) and (d) read as follows:

"(a) Any person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700(a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612.

\* \* \*

"(d) The term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. 53 Stat. 290."

2. See Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. den. 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146; Wiggins v. United States, 188 F.Supp. 374 (E.D.Tenn.1960).

uncle's testamentary trust,[3] of which he was trustee. For the time being, the Company continued in business.

By October 1947, the Company's position had not materially improved. The defendant left his law practice to more actively participate in the affairs of the brewery. Defendant started by learning the different operations of the business: purchasing, manufacturing, brewing, bottling, selling, shipping and promoting the beer. He also studied the Company's serious cost problems. The defendant's goal was to keep the brewery in business by streamlining its operation and then to sell it as a going business. To achieve these ends, he made changes in the Company's management and performed the duties of several positions himself. Even efficiency experts were called in for their advice.

Still the affairs of the Company did not improve. The $3,832.31 earned surplus which the Company had on 1/1/48 steadily declined, and by 10/18/48 there was a deficit of $205,204.16.

While defendant had spent all his time improving the management of the Company, reducing costs and trying to find a buyer for it, he had not inquired into or changed either the treasurer's or the payroll department. Mr. Harry Burger, the former treasurer [4] of the company, had the responsibility of preparing and filing the Company's quarterly tax returns. Burger, who was familiar with the financial condition of the Company, and its creditors decided which creditors were to be paid, since defendant did not know those who had to be paid and those who could be forestalled.

Defendant does not know exactly when he first learned of the deficiency. He testified that it was possibly in August or September of 1948, but at the latest October 8, 1948,[5] when Mr. Burger informed him that the taxes had not been paid, that no return had been filed, and that there were not sufficient funds to pay the taxes. Defendant instructed Burger to file the return even though they could not enclose the payment with it. Neither party knows the date when this return was filed.

Usually two or three weeks after the close of each month's business, Mr. Burger's department would give defendant an informal balance sheet. In 1948, until the bankruptcy audit, these were the only statements of the company's financial position. At the trial, only one of these balance sheets was introduced (P-7, the statement of 9/30/48), which showed the Company's cash on hand and in banks to be $2975.96. By October 18, 1948, these figures had increased to $5,144.85.

On October 8, 1948, defendant met with representatives of the Internal Revenue Service to discuss the delinquency. The Service wanted the tax, the interest, and a 15% penalty paid by the end of the week.

From the time of this meeting with the Internal Revenue Service until the Petition in Bankruptcy, defendant paid only those expenses arising in the normal course of business.[6] Defendant did not receive a salary during this period, nor did he collect any of the loans he had made to the Company.

On October 18, 1948, the Company filed a Petition for Reorganization under Chapter X of the Bankruptcy Act. This attempted reorganization failed and in June 1950, the plant and its equipment were sold in bankruptcy.

 Conceding the first question, that the defendant was the officer or per-

---

3. This trust was established by Joseph Slattery, the founder of the firm.

4. Mr. Burger at this time was no longer qualified to be an officer of this Pennsylvania corporation, since he had changed his residence from Pennsylvania to New Jersey.

5. The date of defendant's meeting with Internal Revenue Service. The uncertain testimony as to any date before October 8 does not sustain plaintiff's burden of proof. See N.T. 68–69, 93, 154 & 175–178.

6. There has been no showing of how much was paid or to whom (N.T. 184).

son under a duty to collect and pay over taxes,[7] there is no proof of his wilful failure to pay. The word "wilfully" in this civil penalty statute does not involve a moral wrong, but does include "a conscious act or omission".[8] Many cases have defined "wilfully" as: "acts knowingly and intentionally"[9]; "without reasonable cause, capricious"[10]; " 'consciously', 'intentional', and 'deliberately', 'voluntarily, as distinguished from accidental'."[11] Cases arising under § 6672 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6672, which has substantially similar language, use these same definitions.[12]

The plaintiff has failed to sustain its burden of showing that the brewery had sufficient funds to pay these taxes. The record shows that (1) according to the informal balance sheet dated September 30, 1948, and given to defendant sometime thereafter, the Company's total cash on hand and in the banks was $2975.96, and (2) the audit ordered by the Bankruptcy Court revealed that the Company's total cash on hand and in the bank as of October 18, 1948, was $5144.85.[13] These sums were much less than the $16,073.88 which Internal Revenue Service was demanding at the time.[14] On the other hand, the record does show that some creditors were paid in "the normal course of business" during the period October 8, 1948, to October 18, 1948, but does not show either what creditors were paid or how much they were paid.

Under the facts of this case, and considering all the circumstances and evidence presented, this court cannot conclude that the effects of the payments made by the Company during the short, ten-day period (from the time when defendant learned of the delinquency until the Petition in Bankruptcy was filed) to unidentified creditors of unspecified amounts, and made in the normal course of business, acted as preferences within the terms of the cases. The situation here, and the defendant's conduct after he learned of the delinquency, are not at all like the many cases cited to the court by the Government in their briefs, where defendants continued to operate their businesses over long periods of time and paid creditors ahead of the Government at times when there were funds sufficient to pay the taxes. The court must conclude that plaintiff has not shown that defendant consciously paid any creditors (other than those paid in the normal course between October 8 and October 18, 1948), thereby consciously and intentionally acting to prefer other creditors, which was the situation in Griswold v. United States, 209 F.Supp. 98 (S.D.Cal. 1962); Bloom v. United States, supra; Wilson v. United States, 250 F.2d 312, 321 (9th Cir. 1958); Frazier v. United States, supra; Paisner v. O'Connell, 208 F.Supp. 397, 401 (D.R.I.1962). These cases rely on language such as the following from the Bloom case, supra, 272 F.2d at p. 223, which is inapplicable to this record since plaintiff has not shown

---

7. That he was, see Bloom v. United States, supra; that he was not, see Wiggins v. United States, 188 F.Supp. 374 (E.D. Tenn. Sept. 1960).

8. Wiggins v. United States, supra fn. 2, 188 F.Supp. at p. 376. Cf. Bloom v. United States, supra fn. 2, stating that the decision of the responsible officer not to pay over the tax was a voluntary, conscious and intentional act to prefer other creditors over the United States and was wilful.

9. In re Haynes, 88 F.Supp. 379, 385 (D. Kan.1949).

10. Kellems v. United States, 97 F.Supp. 681, 682 (D.Conn.1951); Nugent v.

United States, 136 F.Supp. 875 (N.D.Ill. 1955).

11. Levy v. United States, 140 F.Supp. 834, 836 (W.D.La.1956).

12. See Cross v. United States, 311 F.2d 90 (4th Cir. 1962); Frazier v. United States, 304 F.2d 528 (5th Cir. 1962); Campbell v. Nixon, 207 F.Supp. 826 (E.D.Mich. 1962); Schweitzer v. United States, 193 F.Supp. 309 (D.Neb.1961).

13. Of the $5144.85, there was no showing of when this sum was acquired; most of it could have been acquired on 10/18/48.

14. $9,535.18 of this sum was abated in June 1956.

any voluntary conscious intentional act after October 8, 1948, "to prefer other creditors of the corporation over the United States":

"In our view there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of Section 2707(a). The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of Section 2707(a)."

Furthermore, as pointed out in the Frazier case, supra, many courts have held that there may be reasonable cause not to pay taxes of employees such as those involved in this case. It cannot be said that defendant acted "wilfully," or "without reasonable cause, " by failing to pay every cent the Company had to the Government for a claim over five times as great as the cash which the Company had until the date of the Bankruptcy Petition,[15] or by paying expenses incurred in the normal course of business during the ten-day period he was shown to have had knowledge.[16] Plaintiff has not cited, nor has the court found, any civil case leading to the conclusion that a corporate officer, under the circumstances of this case, acts wilfully by not giving the Government all the Company's funds, which total but a small fraction of the taxes claimed to be due.

The undersigned finds that the defendant acted reasonably in not stopping all payments after he learned of the delinquency and that he had reasonable cause for filing the Chapter X Bankruptcy Petition.

Judgment will be entered for the defendant.

The following requests for findings of fact submitted by the defendant are affirmed: 1–23, 25–27, 30 and 32. No. 31 is denied. Defendant's requests for conclusions of law Nos. 11, 14, 15 and 20 are affirmed; 9 and 10 are denied.

Plaintiff's requests for findings of fact Nos. 1–17 and 19 are affirmed,[17] No. 18 is denied, and Nos. 20–25 are denied as stated. Plaintiff's requests for conclusions of law Nos. 1, 2 and 4–7 are affirmed and Nos. 3, 8 and 9 are denied.

Many of the requests for finding of fact and conclusions of law are stated in such a manner that it is unnecessary and inappropriate to rule on them. All such requests not listed above which are inconsistent with the foregoing opinion are denied.[18]

In the event that the trial judge is incorrect in the above conclusion, plaintiff is entitled to judgment in the amount of $2975.76, with interest from August 31, 1954.

---

15. The most which the Government has established is that the Company had $2975.96 of cash from October 8 (the date defendant learned of the delinquency) until the moment before the Petition under Chapter X was filed. At that moment, the Company had the right granted it by Chapter X of the Bankruptcy Act to file such a Petition without paying all its cash to the Government.

16. Wiggins v. United States, supra fn. 2.

17. Except that the date in No. 2 is changed to read "8/25/54" and the date in No. 4 is changed to read "June 1954."

18. For example, the defendant's many requests concerning the assessment are irrelevant in view of Paisner v. O'Connell, supra, United States v. Strebler, 313 F.2d 402 (8th Cir. 1963), and the cases cited therein. This is especially true where defendant has not shown how he was prejudiced in any manner by the method of assessment.

Similarly, defendant's requests concerning the definition of "person" and the applicability of sections 2707(a) and (d) are resolved by the court's decision in Bloom v. United States, supra, and cases cited therein.

Defendant's contention that he was denied due process of law has been considered and rejected by the trial judge.