**Milton R. PSATY, Appellant,**
and
**Martin M. Psaty**
v.
**UNITED STATES of America.**
No. 18750.

United States Court of Appeals,
Third Circuit.

Argued Dec. 11, 1970.

Decided April 20, 1971.

Before ALDISERT, ADAMS and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

The primary issues raised on this appeal arise out of the instructions by the trial court in a civil proceeding as to the burden of proof on an officer of a corporation who resists the collection of penalties for willfully failing to pay over income and social security taxes withheld from corporate employees.

The Commissioner of Internal Revenue assessed 100% penalties pursuant to Section 6672 of the Internal Revenue Code of 1954,[1] against the appellant and his brother, Martin,[2] as the responsible officers of S. F. Berkeley, Inc. (Berkeley) for willfully failing to pay over income and social security taxes withheld from employees of Berkeley for the first two quarters of 1962. The appellant paid a small portion of the penalty assessed and instituted this suit for refund. The Government counter-claimed for the unpaid balance of $55,603.74.[3] The jury returned a verdict against Milton Psaty, appellant, on the Government's counter-claim and the district court entered judgment for the United States.

Milton Psaty and several members of his family operated a water proofing firm with offices in New York City known as Psaty Bros., Inc. In late 1961, Jack Merrill, now deceased, approached the appellant for the purpose of interesting Psaty Bros., Inc. in some highly profitable subcontracting work. After discussion and checking of references, the appellant was convinced that at least one of Merrill's proposed ventures (a

Morris M. Schnitzer, Kasen, Schnitzer & Kraemer, Newark, N. J., for appellant.

Richard Halberstein, Dept. of Justice, Tax Div., Washington, D. C. (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Attys., Dept. of Justice, Tax Div., Washington, D. C., Frederick B. Lacey, U. S. Atty., of counsel, on the brief), for appellee.

1. 26 U.S.C. § 6672 reads as follows:
 "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over * * *"

2. Martin Psaty, an officer of Psaty Bros., Inc., was a party in the court below but the Government's counterclaim was dismissed as to him.

3. The appellant paid $418.50 on account of an assessment of $56,022.24 and filed a claim for a refund. The claim for refund, however, and the complaint alleged two payments totaling $430.50. The Government counterclaim, based upon figures in the Commissioner's certificate of assessment, indicated the Psatys had only paid $418.50.

residential public housing project in Elizabeth, New Jersey under general contract to a contractor named Lucarelli) had possibilities. The contract price for the concrete work involved in the subcontract was stated to be $480,000.00.

In 1948, Psaty Bros., Inc. had secured a New Jersey corporate charter for Berkeley for a purpose that was immediately abandoned. This dormant corporation, however, was available as the vehicle for the Lucarelli project in Elizabeth. Since public work was involved, the subcontractor, Berkeley, was required to deliver a payment and performance bond. The appellant agreed that his own credit and capital, as well as that of Psaty Bros., Inc., would be used to help finance the project and to obtain the necessary performance bonds.

Before it would write the performance bonds, the bonding company insisted that Merrill and Psaty Bros., Inc., deposit $25,000.00 each into a capital account, along with all payments from the general contractor. By formal joint control agreement executed and delivered to the Hudson County National Bank of Jersey City, all outgoing checks of Berkeley were to be signed by Psaty and Merrill, and then countersigned by an agent of the bonding company.[4] It was agreed that all profits would be shared evenly between Merrill and Psaty Bros., Inc.

According to the understanding, Merrill ran the operation from an office in his New Jersey home, assisted at times by his wife and daughter. Supervision and running of the job were exclusively in Merrill's hands. He was also responsible for the handling of correspondence and, with the help of his daughter, the care of the books and other business records. Although Psaty stated initially that his only functions with this operation were to obtain financing and to countersign checks, there was testimony that some letters over his signature were mailed to suppliers and that he saw Merrill occasionally at his New York office.

Shortly, after the contract was signed and the project begun, Merrill told Psaty that he (Merrill) would have to withdraw his original $25,000.00 investment in order to repay the loan by which he had obtained the money.[5] As the project proceeded, the general contractor, Lucarelli, failed to make certain progress payments that were needed in order to meet payroll and supply expenses. The appellant, knowing that he personally and Psaty Bros., Inc., were liable to secure the performance bond in the event of default, obtained several loans for Berkeley and contributed funds from Psaty Bros., Inc., to cover the immediate expenses. In addition to his $25,000.00 initial contribution, a sum in excess of $83,000.00 was added to the project in this manner.

Merrill withheld the income and social security taxes from the Berkeley employees for the first two quarters of 1962 and filed the required returns on form 941, but did not remit the funds to the Government. The appellant testified initially that he felt the loans obtained by him for Berkeley were for all ex-

---

4. It later appears that the bonding company defaulted on this obligation.

5. Merrill had allegedly involved "mob" elements in the project by borrowing his initial $25,000 capital investment from them. In order to induce their financial support, Merrill supposedly told them that he was in sole charge of the operation and that they could share in the profits. When the loan became due, Merrill was forced to withdraw the money in order to repay it. Psaty testified that Merrill then informed him about these fabrications and warned him to stay away from the site for fear that they both might be hurt if Psaty's connection was discovered. The withdrawal check was made payable to the "Estate of Frank," and Psaty testified that he thought that since it needed a counter-signature by the bonding company that it would not clear. For some reason, allegedly intimidation of the bonding company's representative, the check was countersigned and cashed. The bonding company never again exercised its right of countersignature, a right originally requested by them to maintain control over the bank account.

penses, and that he believed that the checks signed for payroll purposes were adequate to cover all withholding taxes. He claimed no knowledge of Berkeley's unpaid withholding taxes until he received a letter on May 29, 1962 from the general contractor indicating that the Government, seeking unpaid withholding taxes for the first quarter of 1962, had levied funds the general contractor owed to Berkeley. With the Government lien on the monies held by the contractor, appellant found it necessary to borrow additional funds on Psaty Bros., Inc.'s credit in order to meet the payroll, complete the contract, and avoid default by Berkeley.

Based on the Commissioner's determination that the appellant was a responsible officer who willfully failed to collect and pay over the social security and income taxes, the appellant was assessed $56,022.24 under the penalty provision of § 6672 Internal Revenue Code (supra). Psaty paid $418.50 of the assessment and then sued for a refund, alleging that he was not a responsible person who had willfully failed to collect and pay over Berkeley's withholding taxes. The United States answered and counter-claimed for the unpaid balance of the assessment. The jury returned a verdict in favor of the United States on the counter-claim and a judgment against Milton Psaty was entered in the amount of $55,603.74 on July 3, 1969. This judgment was later amended upon motion by the Government, dismissing Psaty's claim for a refund and adjusting (in appellant's favor) the amount of the judgment by subtracting that part of the assessment already paid. Psaty has appealed. Jurisdiction is conferred on this court by 28 U.S.C. Sections 1291, 1340, and 1346.

 Since this proceeding involves an effort on the part of the Government to impose statutory civil penalties on a corporate officer under § 6672 of the Internal Revenue Code, before liability can be imposed it must establish that:

(1) the person assessed must have been under a legal duty to collect, account for and pay over the tax;

(2) the failure to collect and pay over the withholding taxes on wages paid must have been willful.

Appellant has challenged the finding of the Commissioner that he was a responsible person with the duty of withholding and paying over the taxes under 26 U.S.C. § 6672. The main thrust of his defense, however, contests the Commissioner's finding that his failure to pay was willful. Psaty asserts that Merrill was in sole charge of the project and that Merrill had, with armed confederates, excluded Psaty from the construction site; that his first knowledge that the taxes had not been paid came when the Commissioner levied monies owed by Lucarelli after the project was completed and the Berkeley treasury was empty. He also introduced evidence to prove that the amount assessed was erroneous, at least as to eight of the employees whose salaries were less than that reported or who were not on the payroll at all.

With the determination of the Commissioner in issue, the question of who had the burden of proof in the Government's counter-claim became crucial.

## I. THE BURDEN OF PROOF

 It has been the uniform rule that a taxpayer must pay the full amount of a tax assessment or penalty before he can challenge its validity in a civil action in the United States district court under 28 U.S.C. § 1346. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). When he institutes such suit in the district court for the recovery of an internal revenue tax or penalty claimed to have been wrongfully collected, he has the burden of proving the assessment was erroneous. Ehlers v. Vinal, 382 F.2d 58 (8th Cir. 1968), Gibson v. United States, 360 F.2d 457 (5th Cir. 1966), National Fruit Products Co. v. United States, 199 F.2d 754 (4th Cir. 1952), cert. denied,

345 U.S. 950, 73 S.Ct. 866, 97 L.Ed. 1373. Since the nature of the suit is an action for money had and received, the taxpayer has the burden of showing that the United States has money belonging to him.

In Steele v. United States, 280 F.2d 89 (8th Cir. 1960) however, the court held that the penalties imposed under §§ 6671 and 6672 of the 1954 Code constituted divisible assessments and were predicated "upon the separate taxes of the individual employees." It held that the assessment represented a cumulation of separable assessments for each employee from whom taxes were withheld. Therefore, corporate officers assessed with the penalties were legally entitled to pay the penalty applicable to the withheld taxes of any individual employee, to make claim for refund and to institute suit for recovery as a means of resolving the question pertaining to their personal liability.

Relying on *Steele,* supra, the appellant paid the penalties on a small number of employees, made claim for refund, and then instituted this tax refund suit. As he expected, the Government responded with its counter-claim for the principal amount of the assessment. This produced a collision between two fundamental principles which we are here called upon to resolve, namely, that the burden of proof in a tax refund case is on the taxpayer and, the other, that he who asserts an affirmative claim (i.e., the Government on the counter-claim) has the burden of proving it. The counter-claim of the Government thus presents an important question which has not only raised a conflict in federal and state decisions, but also among legal commentators.[6]

The appellant, having instituted this suit for refund, assumed the traditional burden of proof as to his claim. When the Government undertook to prove its counterclaim, it established its prima facie case by offering into evidence the certification of the Commissioner's assessment. It contends that this shifted both the burden of going forward with evidence and the burden of ultimate persuasion to the taxpayer. The trial judge sustained the Government's position.[7]

The presumption of correctness afforded the Commissioner's determination allows the Government to establish a prima facie case of liability merely by offering into evidence a certified copy of the Commissioner's assessment. Adams v. United States, 358 F.2d 986, 175 Ct.Cl. 288 (1966) IX Merten's Fed. Income Tax § 49.218. The appellant contends here that the trial judge confused the purpose and effect of the presumption of correctness. He argues that, in the controversy over the counter-claim, the presumption should only have shifted the procedural burden of going forward with the evidence, but not the ultimate burden of proof. He argues that the burden of proof—meaning the burden of persuasion—in the counter-claim " * * * uniformly rests upon the party claiming an affirmative recovery." In the matter sub judice, it is the United States who seeks affirmative relief in the counter-claim for civil judgment upon the penalty assessments.

If the effect of the presumption is to merely shift the procedural burden of moving forward with evidence, then the appellant is correct that the burden of proof on the counter-claim (the burden of persuasion) continues to remain with the Government. On the other hand, if the presumption has the two-fold effect of not only shifting the procedural burden of moving forward with evidence to the plaintiff but of also shifting the

6. See 22 A.L.R.3d 8, § 7(a), 1968; McCormick on Evidence, Ch. 36, §§ 306–309 (1954 ed.); Wigmore on Evidence, §§ 2485–2493, 3rd ed. (1940); Morgan, Instructing the Jury Upon Presumptions and Burden of Proof, 47 Harv.L.Rev. 59, 82 (1933).

7. The Court charged, inter alia, that:
"The plaintiff must establish by the greater weight or by the preponderance of the evidence that the Commissioner's determination was erroneous before the plaintiff can prevail in this case."

burden of persuasion, then we must reject the contention of the appellant.

Under appellant's theory, a taxpayer who makes a partial payment and sues for a refund could thereby shift the full burden of proof as to the balance of the claim to the Government. The difficulty with appellant's contention is that it would impose a substantially greater burden upon a taxpayer who pays his taxes in full and sues for the refund than upon one who makes a partial payment. This is neither logical nor equitable. It is opposed to the congressional intent expressed in the one situation where Congress contemplated the filing of a counter-claim by the Government in a tax refund suit in the district court. In that instance, it provided that the taxpayer would have the burden of proof except as to the issue of whether he had been guilty of fraud.[8]

The machinery prescribed by Congress to determine the amount due the Government is the *assessment* of the administrative agency charged with its collection. Once the tax is assessed a rebuttable presumption arises based, in part, on the probability of its correctness.[9] The presumption is also based upon considerations of public policy. First, as to the accuracy of the amount assessed, the presumption furthers the policy of requiring the taxpayer to meet certain bookkeeping obligations placed upon him by the Code.[10] It also recognizes that the taxpayer has more readily available to him the correct facts and figures. United States v. Lease, 346 F. 2d 696 (2d Cir. 1965). Second, as to the legal duty to collect and pay over the taxes withheld and the willfulness in the failure to do so, the presumption appropriately requires that corpo-

rate officers explain their failure to perform duties imposed upon them by law. Where a presumption owes its origin, as here, to an important public policy, it should operate to fix the burden of persuasion, as well as the burden of going forward. See Morgan, Presumptions and Burden of Proof, 47 Harv.L. Rev. 69, 83 (1933). We hold therefore that when the Government offers in evidence the certification of the Commissioner's assessment in support of the counterclaim, the presumption of correctness operates to place upon the taxpayer both the burden of going forward and the burden of persuasion.[11] Lesser v. United States, 368 F.2d 306 (2d Cir. 1966); United States v. Lease, supra, United Aniline Company v. C.I.R., 316 F.2d 701 (1st Cir. 1963). Thus, the trial judge correctly held that the presumption placed upon this appellant the burden of going forward with the evidence and also the obligation to " * * * establish by the greater weight or by the preponderance of the evidence that the Commissioner's determination was erroneous * * *" Lesser v. United States, supra; Datlof v. United States, 252 F.Supp. 11 (E.D.Pa. 1966), aff'd 370 F.2d 655 (3d Cir. 1966) cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). His instruction with respect to this phase of the case was consistent with the model instructions recently approved by the Judicial Conference of the United States, Committee on Trial Practice and Techniques.[12]

The appellant argues that the trial court's instruction is contrary to our holding in United States v. Slattery, 224 F.Supp. 214 (E.D.Pa.1963) aff'd, 333 F.2d 844 (3d Cir. 1964). We do not

---

8. 26 U.S.C.A. § 7422(e).

9. See McCormick on Evidence, supra, § 309.

10. Internal Revenue Code of 1954, 26 U.S. C.A. § 6001; 26 C.F.R. 31.6001-5.

11. This application of the presumption is consistent with the proposed Rules of Evidence for the U. S. District Courts and Magistrates, Rule 301, as recently submitted by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Agenda F-9, October 1970. For a preliminary draft of this proposal, see 46 F.R.D. 161.

12. Judicial Conference of the United States, Committee on Trial Practice and Technique, Agenda H-7, March 1970.

agree. *Slattery* was tried without a jury and the Government, not the taxpayer, was the plaintiff. It therefore had the original burden of moving forward with evidence and the burden of persuasion. When the Government offered in evidence the Commissioner's certificate of assessment, the burden of going forward and of persuasion shifted. As the opinion indicates, the taxpayer obviously rebutted the presumption with credible and relevant evidence which was not overcome by the Government.[13] The trial judge, therefore, found for the defendant, Slattery.

## II. THE INSTRUCTIONS ON THE PRESUMPTION

The appellant also contends that the trial judge erred in repeatedly instructing the jury that there was a presumption that the assessment of the tax penalty was correct. Appellant argues that once the presumption served its procedural purpose with respect to the production of evidence, "[t]hereafter, it was wrong to weight the scales for the government by charging as to any presumption." [14]

 The presumption is a rule for the conduct of the trial. In applying it, we believe that the trial judge correctly applied it to the burden of proof. Although in the absence of evidence to rebut it the presumption can be decisive, it is nonetheless a rule of law and not evidence. It "* * * is not evidence and may not be given weight as evidence." N. Y. Life Ins. Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 503, 82 L.Ed. 726 (1937). The additional instructions on the presumption, however, had the effect of giving it evidential value. The appellant contends that the evidence he introduced should have destroyed the effect of the presumption of accuracy of the Commissioner's assessment. The court, however, said "I charge you to the contrary." It is difficult to comprehend what the court meant and what the jury could have understood by such instruction. It is not clear what the jury could have understood the trial judge to mean when he repeatedly charged "* * * *the law presumes* that the determination made by the Commissioner of Internal Revenue and its agents is correct * * *" (Emphasis added). The trial judge placed the maximum requirement that can be assigned to a party in a civil suit when he fixed the burden of persuasion upon the appellant, including the burden of proving that appellant did not act willfully. The appellant's major defense was that he did not act willfully in failing to pay the taxes withheld. He introduced considerable evidence to support his contention that he had been excluded from operational control of Berkeley. The burden of persuasion was properly his under the court's charge. The court, however, imposed upon the jury a seemingly impossible task when it also charged, in essence, that the presumption of correctness must be weighed against the conflicting evidence, even as to the essential element of willfulness.[15] This required the

---

13. Our examination of the notes of testimony reveals the introduction of the certificate of assessment by the Government and that at the conclusion of the testimony, the trial judge affirmed the following conclusion of law, inter alia, requested by the Government:
 "4. The assessment of a penalty under Section 2707(a) and (d) is presumptively correct and the burden is on the taxpayer to overcome this presumption by countervailing proof. U. S. v. Strebler, supra." [313 F.2d 402]

14. The trial judge also instructed the jury that:

"I say, Mr. Psaty contends that that (opposing evidence) should destroy the effect of the presumption of the accuracy of the Commissioner's assessment. I charge you to the contrary. (Bracket inserted) * * * But this presumption of correctness is effective unless and until you find from the evidence the amounts in the Government certificates of assessments are incorrect."

15. The court charged:
 "The Commissioner of Internal Revenue, acting through his duly-authorized agents, determined that he, Mr. Milton Psaty, was a responsible officer of S. F.

jury to weigh the testimony of witnesses and other evidence presented by appellant against an opposing presumption and to determine which "evidence" was of greater probative value.[16]

■■■ We do not believe that there was any necessity for the court to give the jury any instructions on the presumption.[17] It had fully served its purpose. It had been applied by the trial court as a rule for the conduct of the trial. In discussing appropriate instructions to the jury, where a defendant has, by substantial evidence, met a presumption upon which the plaintiff has relied, Judge Learned Hand noted "[t]hat if the trial is properly conducted the presumption will not be mentioned at all * * *." Alpine Forwarding Co. v. Penna. Railroad Co., 60 F.2d 734, 736 (2d Cir. 1932).[18] We do not decide that an instruction to a jury on the presumption of correctness is reversible error in every case. We do believe that the recurring instructions on the pre-

sumption in this case, however, were bound to give the jury the impression that the presumption was evidence. Although the court repeatedly referred to the presumption of correctness, it failed to furnish guidance to the jury as to the amount or quantity of proof required to dispel the presumption. In this context, it is doubtful that the jury was able to distinguish this rule of law from the evidentiary facts. This was not harmless error. The major issue at trial was whether or not Psaty had willfully failed to pay over the taxes to the Government. The charge as a whole unfairly weighted " * * * the scale of justice against the party with the burden of proof." Cal. Evidence Code, § 600, supra. We, therefore, are of the view that the instructions on the presumption in this case, especially as to the issue of willfulness, amounted to prejudicial error. See Kentucky Trust Company v. Glenn, 217 F.2d 462 (6th Cir. 1954).

Berkeley, Inc., and that he wilfully failed to pay the withheld taxes to the Government.

"I charge you that the law presumes the determination made by the Commissioner of Internal Revenue and its agents is correct, and that the burden of proving its incorrectness is upon the plaintiff here, Milton Psaty.

"The United States does not have the burden of proving the assessment is correct since the law presumes it to be correct. The plaintiff must establish by the greater weight or by the preponderance of the evidence that the Commissioner's determination was erroneous and must so establish that it was erroneous before the plaintiff can prevail in this case.

"I so charge you."

16. When " * * * a party with the burden of proof has a presumption invoked against him and if the presumption remains in the case as evidence, even though the jury believes that he has produced a preponderance of the evidence, the effect is that he must produce some additional but ascertainable quantum of proof in order to dispel the effect of the presumption." Cal.Evid.Code, § 600, Comment, Assembly Committee on Judiciary.

"It is a mental impossibility to weigh a presumption as evidence." See dissent of Justice Traynor, Speck v. Sarver, 20 Cal.2d 585, 128 P.2d 16, 21 (1942).

17. "A presumption, to be an efficient legal tool, must (1) be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carries unpredictable connotations to different minds; * * * " American Law Institute Model Code of Evidence, Rule 704, Comment (b) on para. 2.

18. "It is impossible to weigh a rule of law on the one hand against physical objects and personal observations on the other to determine which would more probably establish the existence or non-existence of a fact.

"The burden of proof may well be impossible for a litigant to sustain if a presumption is applied as evidence against him. He must, under such a rule, establish the existence of certain facts by a preponderance of the probabilities, while a presumption persists that these facts do not exist * * * ." Speck v. Sarver, supra, 128 P.2d 21.

## III. INSTRUCTIONS NOT TO SPECULATE AS TO AMOUNT OF PENALTY, AND THE FORM OF THE VERDICT

We now turn to the final questions raised by appellant:

(1) the instructions to the jury not to speculate as to the amount of the penalties and (2) the form of of the verdict.

Taxes were withheld from the more than one hundred persons employed by Berkeley. At the trial, appellant attempted to prove that the payroll was both overstated and contained fictitious names. He called six employees who gave testimony that their payroll figures were overstated. There was evidence that two names carried on the payroll performed no services. The appellant argues, therefore, that the logical and inescapable inference to be drawn from these instances is that they were typical of payroll frauds perpetrated upon Berkeley and the United States by Merrill. He concludes that this evidence demonstrated the unreliability of the payroll figures. Since it was his position at trial and on appeal that the burden of proof on the counter-claim was upon the Government, he argued that it had the responsibility to prove the amount owed for taxes actually withheld.

With respect to the money that should have been withheld and paid over to the Government, the court charged the jury not to speculate, to decide what amount represented true wages and what amount should have been withheld from the particular employee's wages and paid over to the Collector of Internal Revenue. The appellant contends that such instructions against speculation were prejudicial, "resulting in a judgment against the plaintiff for a sum of which some indeterminate part was certainly never withheld from actual employees and, therefore, never owed by Berkeley or the plaintiff." Since it is our view that the presumption had the effect of casting the full burden of persuasion upon the appellant in the counter-claim also, we do not agree that the trial judge erred in this aspect of the charge.

 The appellant brought his suit on the theory that the assessment constituted an aggregate of divisible parts represented by the taxes withheld from each employee. His proof of error as to a small number of employees was not necessarily proof of error as to all. In such circumstances, proof of the amount due as to some did not meet his burden of establishing the amount due as to the others. Hoffman v. C.I.R., 298 F.2d 784 (3d Cir. 1962).

Since we must remand this case for a new trial, there is no purpose in discussing the questions pertaining to the form of the verdict returned and the propriety of its amendment by the trial judge.

The judgment of the court below will be vacated and the cause remanded for a new trial in accordance with the considerations herein set forth.