**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3392
_____

UNITED STATES OF AMERICA

v.

EDWARD J. MEEHAN;
COLLEEN M. MEEHAN,

Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 10-cv-00713)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2013
Before:  AMBRO, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed:  July 3, 2013 )
_____

OPINION
_____

PER CURIAM

The United States of America instituted a civil action to reduce to judgment

federal tax assessments against Edward J. Meehan and Colleen M. Meehan for the tax

years 1996, 1998, 1999, 2000, 2001.[1] The date of the tax assessment for the 1996 and 1998 tax years was June 7, 1999.

The parties filed cross-motions for summary judgment. The Meehans contended that the United States did not file suit within ten years of June 7, 1999, so the United States could not reduce the assessments for 1996 and 1998 to judgment. The Meehans sought to redirect any credits applied to the 1996 and 1998 assessments to the assessments for the other years. In its motion, the United States argued that it had presented official records of the Internal Revenue Service ("IRS") showing that the IRS assessed the taxes at issue, and the Meehans had not shown that the assessments were incorrect or that they did not owe the tax or the penalties.

The District Court concluded that the suit was timely in all regards and that there was no genuine issue of material fact with respect to whether the Meehans owed all the taxes and penalties that the IRS had assessed against them. The District Court denied the Meehans' motion, granted the United States' motion, and entered judgment in favor of the United States. The Meehans appeal.[2]

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary. See Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001).

---

[1]Because we write primarily for the parties, who are familiar with the facts of the case, we will not list the amounts of taxes and penalties and we will otherwise limit the description of the case to the details essential to our analysis.

[2] They also submit a motion to file a supplemental appendix.

We first consider whether the suit against the Meehans was timely filed. The United States may proceed in court to collect a tax assessed "within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). However, the running of the limitations period of § 6502 is suspended for the period during which the United States is prohibited from collecting an income tax deficiency by levy. 26 U.S.C. § 6503(a)(1). In 1998, Congress passed the IRS Restructuring and Reform Act of 1998 ("1998 Reform Act"), which took effect on January 1, 2000. Pub. L. No. 105-206, § 3462, 112 Stat. 685 (1998). The 1998 Reform Act added a prohibition on levies while an offer-in-compromise is pending, and, if the offer is rejected, during 30 days after the rejection. 26 U.S.C. § 6331(k)(1). The amendment was made to apply to offers-in-compromise pending on December 31, 1999. Pub. L. No. 105-206, § 3462(e), 112 Stat. 685, 766 (1998).

There is not a genuine dispute of material fact about whether an offer-in-compromise was pending on December 31, 1999. The United States presented an IRS Form 4340 that included notations that an offer-in-compromise was pending on December 7, 1999, and that it was "rejected, returned, terminated" on May 12, 2000. United States' Response and Cross Motion for Summary Judgment, Ex. 2. The United States also submitted a declaration from an IRS employee to explain that the first notation meant that the offer-in-compromise became pending on December 7, 1999, and that the

3

latter notation referred to a date 30 days after the offer-in-compromise was rejected.[3] Id. at Ex. 1.

On appeal, the Meehans argue that this evidence was insufficient to show that an offer-in-compromise was pending (and note that the United States never produced the offer-in-compromise itself). However, in the District Court, the Meehans did not dispute the existence of any of the offers-in-compromise; in fact, they, themselves, referred to an offer-in-compromise that "was dated December 7, 1999." Meehans' Motion for Summary Judgment, ¶ 7. Also, information in a Form 4340 is generally considered to be presumptively correct, see Psaty v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971) (discussing tax assessments), and the United States additionally put forth a representative who made averments relating to the information on the form. Putting aside whether the first offer-in-compromise affected the limitations period in December 1999 under earlier law, it was pending as of January 1, 2000, and it then suspended the limitations period. The limitations period remained suspended until May 12, 2000, for a total of 132 days, as the District Court concluded.

---

[3] The United States concedes on appeal that the record does not show whether this offer-in-compromise was rejected or returned, Appellee's Brief at 26 n.8. However, if it was rejected or returned on the day listed on the Form 4340, the statute would have been tolled at least until then. (Tolling would end for a returned offer-in-compromise; it would continue for 30 days for a rejected offer-in-compromise. See 26 U.S.C. § 6503(a)(1); 26 U.S.C. § 6331(k)(1).) The same concession and this discussion apply to a third offer-in-compromise, too.

There also was no genuine issue of fact regarding whether the limitations period was tolled by the second offer-in-compromise. The Meehans contend that the United States did not show that the second offer was pending from June 5, 2002; they argue that it was not pending until July 12, 2002. In the District Court, the United States presented a Form 4340 with notations that the offer-in-compromise was pending beginning June 5, 2002, and remained pending until it was "rejected, returned, terminated" on August 23, 2005. The United States also submitted the declaration of its representative who averred that the notations meant that the offer-in-compromise was received on June 5, 2002, and rejected 30 days before August 23, 2002.[4] The Meehans did not present evidence to the contrary at the summary judgment stage. After the District Court entered judgment, they presented an argument (which they renew in this Court) that the 2002 offer-in-compromise was not pending until the IRS received it on July 12, 2002. However, they

_____

[4] The United States later filed a notice of error regarding the declaration when counsel noticed that the letter to the Meehans about the second offer-in-compromise was dated August 23, 2002. Counsel interpreted that date to mean the offer-in-compromise was rejected on that date and that the United States was entitled to 30 additional days of tolling (until September 22, 2002). However, later, counsel for the United States realized that the second offer-in-compromise had been returned instead of rejected on August 23, 2002 (so the United States was not entitled to the additional 30 days). The Meehans assert that this error (and the related error in the declaration of the IRS representative, who averred that all three offers-in-compromise had been rejected) undermined any presumption of correctness afforded to a Form 4340 and precluded summary judgment in favor of the United States. Although the error was unfortunate (and could have been avoided by a careful examination of the original documents), counsel for the United States was forthright about the mistake, and the mistake did not relate to the validity of the Form 4340 itself (it was an error in interpretation). The error did not preclude summary judgment (and it is not cause for dismissal of the suit, sanctions, or other related relief requested by the Meehans).

have not formally appealed from the District Court's rejection of that argument, and we do not consider it.[5]  See Fed. R. App. P. 4(a)(4)(B)(ii).  In short, we conclude that on the record before the District Court there was no genuine issue of material fact as to whether the limitations period was tolled from June 5, 2002, to August 23, 2002, for a total of 79 days.

In total, the limitations period was suspended for a total of 258 days, 211 for the first two offers-in-compromise plus an additional 47 days when the third offer-in-compromise was pending (from December 20, 2005, to February 5, 2006).[6]  Therefore, the limitations period ended on February 20, 2009, so the lawsuit was timely filed on February 19, 2009.  For the reasons given by the District Court (which the Meehans do

---

[5] If we were to consider the issue we would note that the evidence that they relied on, even if it could have been considered "new" (which the United States disputed on the basis that it had been provided six months before the District Court entered judgment), was not evidence that would have changed the outcome.  See Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991).  In the record is an offer-in-compromise signed by an IRS official on June 5, 2002 (and signed by Mr. Meehan in April).  United States' Response to Edward Meehan's Additional Post-Judgment Motion, Ex. 101.  There is also a letter from the IRS requesting additional information (including information for his wife, the joint-filer) for that offer-in-compromise, and a letter from Mr. Meehan referring to an "April" offer-in-compromise and referring to the submission with additional information (which the IRS received in July) as his "amended" offer-in-compromise (he also stated that he was sending "another copy" of his "original form" with his wife's signature).  Id. at Exs. 103 & 104.  That submission was even stamped "amended."  Id. at Ex. 105.  The evidence is consistent with the conclusion that the second offer-in-compromise was received for consideration by the IRS on June 5, 2002, and was thereafter pending (during which period the Meehans were given, and took, an opportunity to amend it).

[6] The Meehans do not raise arguments in their brief about the length of time the limitations period was suspended by the third offer-in-compromise.

not appear to contest), there was no genuine issue of material fact relating to the tax assessments themselves.

The Meehans, however, do contest the ruling in favor of the United States on the penalties due. A penalty is assessed for a failure to pay a tax unless "it is shown that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2); see United States v. Boyle, 469 U.S. 241, 245 (1985) (assigning the "heavy burden" to make such a showing to the taxpayer). Reasonable cause has been interpreted to mean "ordinary business care and prudence." 26 C.F.R. § 301.6651-1(c)(1); Boyle, 469 U.S. at 246; E. Wind Indus., Inc. v. United States, 196 F.3d 499, 508 (3d Cir. 1999) (explaining that reasonable cause exists when the evidence shows that the taxpayers exercised "ordinary business care and prudence and that they would have suffered undue hardship if they would have paid the taxes when due"). The reasonable cause analysis requires consideration of all facts and circumstances. See 26 C.F.R. § 301.6651-1(c)(1); see also Marrin v. Comm'r, 147 F.3d 147, 152 (2d Cir. 1998) (listing factors that constitute "reasonable cause," such as an unavoidable postal delay or death or serious illness of a taxpayer).

The District Court correctly concluded that there was no genuine issue of material fact regarding whether the Meehans had shown reasonable cause. The Meehans did not produce evidence to show that they had exercised ordinary business care or would have suffered an undue hardship. See 26 C.F.R. § 301.6651-1(c)(1) (incorporating the

7

definition in 26 C.F.R. § 1.6161). After reviewing the documents in the record,[7] we must

conclude that although the Meehans at times suggested or implied that health and

employment troubles prevented them from making payments to the IRS, the Meehans did

not present evidence to meet their burden to show that the penalties were not warranted.

For instance, Edward Meehan presented evidence that he was diagnosed with a kidney

condition. Defense Ex. No. 5. However, the evidence did not show that he was afflicted

during the tax years in question (or when the taxes came due); one doctor said that

Edward Meehan was under treatment[8] since June 2003; another doctor treated him for the

condition since 2004, see id. Furthermore, as the District Court noted, the Meehans did

not provide further documentation of the effect of the illness on Edward Meehan, his

ability to work, or his family's finances during any time period. The Meehans also

presented information about a large health care company's financial troubles and

bankruptcy. Defense Ex. No. 9. Apparently, they presented the information to support

their argument that Edward Meehan lost a client. However, again they did not put proof

---

[7] We are mindful that some documents may not have been properly docketed in the District Court and/or properly served on the Government by the Meehans. But it appears that all parties essentially agree about what information the District Court considered in making its decision. To consider what the District Court did, we have reviewed documents on the District Court docket, documents received from the District Court, and documents furnished by the Meehans in response to our request. Because all of the documents we have reviewed were submitted by the Meehans or otherwise available to them from the District Court docket, we do not agree with the Meehans that they have "not been given the same record of the case" as we have, and we will not provide them a copy of the record, as they request.

[8] Treatment was described as "dietary restrictions and medication."

8

in the record to back up their assertion (or implied assertion).[9] See Fed. R. Civ. P. 56(c)(1).

Also, the District Court correctly determined that the Meehans had not shown that their failures to pay were not due to willful neglect. Willful neglect is understood "as meaning a conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. The Government put forth evidence that suggested conscious decisions not to pay monies due. For instance, the Government provided Edward Meehan's deposition testimony that he had chosen not to sell his house and move to a smaller one because, if he had sold it, he "would have had to take a huge hit from the IRS," and that he had used monies from an inheritance for things other than his tax debt. Response and Cross-Motion for Summary Judgment, Ex. 7, p. 11-12. The Meehans did not provide evidence to the contrary to meet their burden, including evidence about when Edward Meehan had or did not have a job.[10] See Fed. R. Civ. P. 56(c)(1).

---

[9] The Government submitted more evidence insomuch as it provided Edward Meehan's deposition testimony, which included his statement that, from 1996 to 2000, he did not have enough money to pay his day-to-day living expenses and his taxes (and that in 2000, he did not have enough to pay even just his daily living expenses). United States' Response and Cross-Motion for Summary Judgment, Ex. 7, p. 8-9. Nonetheless, the Meehans did not present proof of the hardship, and the deposition testimony also showed that the Meehans did not pay off the tax liability on receipt of a $50,000 inheritance in 2004 (Edward Meehan used some of the money to buy a car instead). Id. at 11-12.

[10] The Meehans contend that the District Court got the "actual fact" regarding Edward Meehan's employment history wrong, but they did not put forth evidence to show a genuine dispute about the fact.

9

The Meehans also contest how the District Court calculated the judgment. They point to the difference between the amount the United States requested in the complaint ($74,224) and the amount requested as of December 2010 ($62,696.76), which the District Court relied on. They further argue that some credits on the transcripts provided by the United States were ignored in a pre-suit IRS document regarding their case. The discussion of the amount due in that letter did not influence the District Court's calculation of the judgment, which was accurately based on information in transcripts of the Meehans' taxpayer accounts (which reflected credits as well as assessments and penalties) and an affidavit from a technical advisor with the IRS, none of which the Meehans controverted with competent evidence.

For these reasons, we will affirm the District Court's judgment. The Meehans' motion to file a supplemental appendix is granted.