**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1248

_____

UNITED STATES OF AMERICA

v.

ALBERT BOUFARAH,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:22-cv-04476)
District Judge: Honorable Robert Kirsch

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 2, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Filed: March 2, 2026)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

      Albert Boufarah appeals a summary judgment for the Government on his unpaid

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

income-tax liabilities for 2009 through 2013. We will affirm.

I

Boufarah failed to pay all his income taxes for tax years 2009 through 2013. Three times between December 2010 and March 2017, the Internal Revenue Service permitted Boufarah to pay his tax liabilities in installments. He defaulted each time.

In September 2020, Boufarah proposed a fourth installment agreement. The IRS accepted that proposal the same day, but Boufarah quickly defaulted yet again. The IRS sent Boufarah a notice of default during the week of June 14, 2021. The notice stated that if Boufarah did not respond within thirty days, the IRS would terminate the agreement. Boufarah took no action in response.

On October 14, 2021, Boufarah's lawyer called the IRS to request a new installment plan. The revenue officer assigned to collect Boufarah's liabilities advised the lawyer of the forms and information Boufarah needed to submit. And for several months, the revenue officer and Boufarah's lawyer exchanged communications and tried to finalize an agreement. By July 2022, the parties had not reached an agreement, and the Government believed the expiration of the statute of limitations on Boufarah's 2009 tax liability was imminent, so it filed suit on July 8. The parties took discovery, and the Government moved for summary judgment.

In support of its motion, the Government submitted transcripts that display the IRS's assessment of Boufarah's tax liability for a given year and list the actions taken by the IRS or Boufarah in respect to that liability. The Government also submitted declarations by Revenue Officer Rebecca Troichuk describing how those transcripts are

generated.

Officer Troichuk explained that the IRS uses an electronic database called the Integrated Data Retrieval System (IDRS) to store information about "the reporting, assessment, and collection of" a taxpayer's income-tax liability. App. 73. IRS employees use the IDRS to generate the various transcripts, one of which is called TXMODA. A TXMODA transcript "provides the most complete set of data regarding a taxpayer's liability and events that have occurred regarding assessment or collection of that liability." App. 484. Another kind of transcript—called an "account transcript"—is less comprehensive but includes plain-language descriptions of each action it lists. App. 73–74. A third kind of transcript is IRS Form 4340, titled "Certificate of Assessments, Payments, and Other Specified Matters." App. 100. Forms 4340 are similar to account transcripts but are certified under seal. The Government submitted account transcripts and Forms 4340 for each tax year at issue, and it submitted TXMODA transcripts for 2009 and 2010.

Officer Troichuk also explained in her declarations and deposition testimony that the transcripts contain various erroneous notations. Some of those errors, she said, are attributable to erroneous inputs by IRS employees, while others are caused by glitches in the IDRS.

One error she noted is the IDRS's failure to generate an entry on September 13, 2021 signaling that the fourth installment agreement had been terminated. Officer Troichuk explained that the IDRS should, but does not always, automatically log the termination of an installment agreement ninety days after the IRS sends a default notice if

3

the taxpayer does not act in response. That ninety-day period, she explained, accounts for the thirty days' notice required before termination, *see* 26 U.S.C. § 6159(b)(5)(A), and fifteen extra days for mailing, plus the additional thirty days a taxpayer has to appeal the termination, *see* 26 C.F.R. § 301.6159-1(e)(5), and another fifteen extra days for mailing. She blamed a "computer glitch" for the system's sporadic failures to log installment-agreement terminations. App. 436.

The IDRS later generated a notation on Boufarah's 2009 transcripts reflecting that the fourth installment agreement terminated as to the 2009 liability on July 18, 2022. July 18 was recorded in the system as the date the statute of limitations for a suit to collect the 2009 liability would expire. So on that date, the IDRS automatically cleared Boufarah's balance on his 2009 liability.[1] It also logged the termination of the installment agreement, which was still "active" in the system because of the glitch but could no longer include Boufarah's 2009 liability because it had been cleared. App. 439.

Officer Troichuk noted two other errors. First, the 2009 transcripts show that an installment agreement was pending on January 5, 2011, but she says there was no agreement pending on that day. She stated that someone erroneously entered the code for a pending installment agreement, and she pointed out that another code reversing the transaction was input the same day. Second, Officer Troichuk noted that Boufarah's transcripts show that an installment agreement terminated on March 25, 2022, when in reality the most recent installment agreement had been out of force for months by then.

---

[1] The IRS immediately reversed the transaction and reinstated Boufarah's balance in the IDRS.

4

She said this error also resulted from an incorrect input.

The District Court granted the Government's summary judgment motion and awarded it the full amount of Boufarah's income-tax liabilities for the years in question. This timely appeal followed.

## II[2]

On appeal, Boufarah makes two arguments. First, he argues that there is a genuine issue of fact whether an installment agreement was still active when the Government filed its Complaint—a fact that, if true, would render this suit premature. Second, he argues that the transcripts of his tax liabilities were not admissible, so the Government failed to support its motion with admissible evidence. Like the District Court, we are unpersuaded.

## A

The Government cannot sue a taxpayer for unpaid assessments while an installment agreement between the parties is in effect. 26 U.S.C. §§ 6331(k)(2)(C), (3)(A). Boufarah contends that a reasonable jury could find that the fourth installment agreement was still in effect on July 8, 2022 because the transcripts for his 2009 liability

---

[2] The District Court had jurisdiction under 26 U.S.C. § 1331 and 28 U.S.C. §§ 1340, 1345. We have jurisdiction under 28 U.S.C. § 1291. We review a summary judgment de novo, viewing the facts in the light most favorable to the nonmovant. *Jean-Paul Weg LLC v. Dir. of New Jersey Div. of Alcoholic Beverage Control*, 133 F.4th 227, 232 (3d Cir. 2025) (citation omitted). We will affirm if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* We review an evidentiary decision underlying the summary judgment for abuse of discretion, disturbing it only if "no reasonable person would adopt the district court's view." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation marks omitted).

contain notations dated July 18, 2022 that read "installment agreement terminated" or something similar. App. 104. Not so. The rest of the record leaves no doubt that the fourth installment agreement terminated many months earlier. No reasonable jury could find otherwise.

Boufarah neither disputes that the IRS issued him a notice of default the week of June 14, 2021, nor that he failed to respond. The notice of default—called a CP523—informs the taxpayer that if he does not take appropriate action, the IRS will terminate the agreement in thirty days. *See* 26 U.S.C. § 6159(b)(5)(A). In addition, the TXMODA transcripts for Boufarah's 2009 and 2010 tax liability show a "balance due" notation dated September 13—ninety-one days[3] after the default notice was issued. App. 143, 153, 485. That notation is consistent with Officer Troichuk's statement that internally, the IRS treats an agreement as terminated ninety days after issuing a notice of default if the taxpayer takes no action in response.

Boufarah also knew at least as early as October 2021 that the fourth installment agreement was no longer in effect. That month, his lawyer called the IRS to seek a new installment agreement. And for several months thereafter, Boufarah and the IRS worked toward a new agreement.

Finally, Troichuk explained how the erroneous July 18 notation came to appear. The IDRS fails to log the termination of an installment agreement from time to time, even though it's ostensibly programmed to do so ninety days after a notice-of-default letter is

---

[3] The ninetieth day after the notice was September 12, a Sunday.

6

logged. That "glitch" happened here. App. 436. So on July 18, 2022—the date logged in the system as when the statute of limitations would have run—the system purported to clear Boufarah's balance for his 2009 liability and accordingly terminated the installment agreement that was still logged as "active." App. 439. That's why the termination notation appears only on the 2009 transcripts—only the limitations period for the 2009 liability would have run on July 18, 2022. But the fourth installment agreement covered Boufarah's liability for all five tax years. Had the agreement actually terminated on July 18, 2022, that notation would have appeared on the transcripts for all five years.

"[T]he mere existence of a scintilla of evidence" in Boufarah's favor is not enough to avoid summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The notations on his 2009 tax transcripts are just that—a mere scintilla. No reasonable jury could conclude that an installment agreement was still in effect when this suit was filed.

B

When the Government sues a taxpayer for unpaid assessments and supports its claim with proof of those assessments, the burden shifts to the taxpayer to show by a preponderance of the evidence that the assessments are erroneous. *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir. 1971). The Government here submitted tax transcripts showing its assessments for each tax year at issue. Boufarah contends, however, that these transcripts would be inadmissible at trial and therefore the Government has not established its prima facie case. *See* Fed. R. Civ. P. 56(c)(2).

The parties agree that the information in the account transcripts is hearsay. The

7

District Court held that the transcripts were admissible under two exceptions found in the Federal Rules of Evidence: (1) Rule 803(6), which excepts "records of a regularly conducted activity," and (2) Rule 803(8), which excepts certain records or statements of public offices. Both rules include a caveat that records will not be admissible if the opponent shows circumstances that "indicate a lack of trustworthiness." Fed R. Evid. 803(6)(E), (8)(B).

Boufarah argues that the transcripts submitted by the IRS are not trustworthy because they contain several erroneous notations. Boufarah is correct that at least three times the transcripts for one or more tax years show a transaction that did not actually occur on the date displayed. As noted, the 2009 transcripts show Boufarah's tax liability zeroing out and an installment agreement terminating on July 18, 2022, even though neither of those events actually occurred on that day. The 2009 transcripts also show an installment agreement pending on January 5, 2011, even though no such agreement was pending. And all of Boufarah's transcripts contain notations reflecting that an installment agreement terminated on March 25, 2022, even though there was no active installment agreement that could have terminated on that date.

But the District Court concluded that these errors were too few and minor to render the tax transcripts untrustworthy. We see no abuse of discretion in that conclusion. As the District Court noted, courts routinely admit IDRS-generated tax transcripts—most typically the Form 4340—in collection suits. *See Perez v. United States*, 312 F.3d 191, 195 & nn. 14, 15 (5th Cir. 2002) (per curiam) (collecting cases that hold Forms 4340 admissible to prove assessments); *United States v. Meyer*, 914 F.3d 592, 594 (8th Cir.

8

2019) (same). The District Court also correctly noted that the errors identified by Boufarah have nothing to do with the calculation of his assessments, which is what the Government offered the transcripts to prove. *Cf. United States v. Casoni*, 950 F.2d 893, 909–10 (3d Cir. 1991) (records offered to show how a person described an event, not to show that the event occurred, so time lapse between alleged event and recording did not undercut the records' trustworthiness).

And as Officer Troichuk explained, the tax transcripts display every single transaction logged manually by an IRS employee or automatically by the IDRS—even erroneous ones that are immediately reversed. A few erroneous notations are hardly unexpected on transcripts that display the liability of a taxpayer like Boufarah, who has had outstanding tax liabilities for over a decade and received repeated installment agreements from the IRS. Those errors do not necessarily cast doubt on the entire transcript on which they appear.

\* \* \*

For the reasons stated, we will affirm the District Court's summary judgment.